# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| Elena Espino, | Case No. 2:24-cv-02347-CDS-DJA |
| Plaintiff | **Order Granting Defendants' Motion to Dismiss and Joinder** |
| v. | |
| Statebridge Company LLC, et al., | [ECF Nos. 6, 13] |
| Defendants | |

Plaintiff Elena Espino, as trustee of the Rommel and Elena Espino Trust, filed this case against defendants Statebridge Company, LLC; Wilmington Savings Fund Society, FSB; Sables, LLC; Mortgage Electronic Registration Systems, Inc.; Universal American Mortgage Company, LLC; and a series of yet-to-be identified individuals and entities. First am. compl. (FAC), ECF No. 1-1 at 2–4. The defendants removed this action from Eighth Judicial District Court of Clark County, Nevada. ECF No. 1. Espino, the current record owner, among her seventeen causes of action, seeks a declaration that the defendants cannot enforce a deed of trust against the property located at 6641 Blue Hawaii Ave., Las Vegas, NV 89110 ("the property"). *See* ECF No. 1-1. Defendants Statebridge and Wilmington move to dismiss the FAC. Mot. to dismiss, ECF No. 6.[1] Defendant Sables also seeks to join the motion to dismiss. ECF No. 13.

As the current trustee of record under the deed of trust, I find that Sables has a similar interest in Wilmington's and Statebridge's arguments in its motion. Therefore, I grant Sable's request to join the motion. For the reasons set forth herein, I grant defendants Wilmington, Statebridge, and Sables's (collectively, "defendants") motion without prejudice and with leave to amend.

---

[1] This motion is fully briefed. *See* Opp'n, ECF No. 10; Reply, ECF No. 15.

I.      **Background**[2]

On or around November 1, 2005, Rommel[3] and Elena Espino purchased the property with funds obtained on a thirty-year first mortgage and a fifteen-year second mortgage, secured by the property, both from Universal. ECF No. 1-1 at ¶ 16. The second loan was in the amount of $94,300.00, secured by the second deed of trust (which identified Universal as the lender and Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary solely as a nominee for Lender and Lender's successors and assignees). *Id.* at ¶¶ 7–9, 16, 44, 252.

Espino has lived at the property since 2005 and has received mail there since that time. *Id.* at ¶ 18. Around November 2008, Espino began to fall behind on payments on both mortgages. *Id.* at ¶ 20. On April 13, 2009, Universal sold or assigned the first mortgage to US Bank N.A. and, from then on, Espino received no further communication from Universal regarding the first or second mortgages. *Id.* at ¶ 21. Espino claims that she did not receive

> any emails, phone calls, monthly mortgage statement, demand letters, past due invoices, notices of default, or any other document which indicated Universal's intent to: 1) enforce the Second Mortgage, 2) get paid on the Second Mortgage, 3) calculate late fees or penalties for non-payment of the Second Mortgage, 4) accrue interest on the Second Mortgage, or 5) foreclose on the Blue Hawaii Property in order to satisfy the debt which was secured by the Second Mortgage. The Second Mortgage remained inert until 2023 . . . .

*Id.* at ¶ 22.

On April 13, 2009, Cooper Castle Law Firm LLP took over as substitute trustee of the deed of trust on the first mortgage, and served and recorded a Notice of Breach regarding Espino's obligations under the first mortgage. *Id.* at ¶¶ 23–24. Espino believed that this "notice of default" was regarding both mortgages because she and her husband had stopped paying both. *Id.* at ¶ 25.

---

[2] Unless otherwise noted, the court only cites to Espino's first amended complaint to provide context to this action, not to indicate a finding of fact.

[3] Rommel has since passed away. ECF No. 1-1 at ¶ 9. In this action, when I refer to "Espino," I am referring to Elena Espino only.

Espino alleges that she and her husband sought to modify their loan with US Bank, which assured them "on multiple occasions, that once the process was finished all of their pre-existing mortgage obligations would be modified into one lower payment with a lower interest rate." *Id.* at ¶¶ 26–29. After more than a year, Espino and her husband

> were finally presented with the final paperwork to modify their loan. Upon information and belief, these documents were voluminous, technical, and extremely difficult to understand by lay persons, but US Bank N.A. assured Plaintiff and Her late husband that by signing their mortgage obligations would be resolved, the foreclosure upon the Blue Hawaii Property would not occur, and their interest rate would decrease substantially.

*Id.* at ¶ 31. On May 10, 2010, Cooper Castle recorded a rescission of default, rescinding the recorded Notice of Breach. *Id.* at ¶ 38. From the time of the sale of the first mortgage, until May 10, 2010, neither Universal nor any of its authorized agents, sent any communication to Espino or her husband about the second mortgage, even though they were not submitting any payments on it. *Id.* at ¶ 39.

Espino claims that she "believed that both the First Mortgage and Second Mortgage were consolidated into the modified loan, or that the loan was abandoned, and that all outstanding debts had been resolved, and no additional payments were required under the terms of the Second Mortgage." *Id.* at ¶ 40. Espino complied with the modification terms without incident. *Id.* at ¶ 41. No additional documents, statements, or anything else was sent to Espino regarding the second mortgage. *Id.* at ¶¶ 42, 46–57. The second mortgage reached maturity on November 1, 2020. *Id.* at ¶ 43. Espino claims that on November 28, 2023, Universal assigned "all beneficiary interest" in the second mortgage to Wilmington. *Id.* at ¶ 63. She claims that this assignment did not include the deed of trust for the second mortgage. *Id.* Wilmington then appointed Statebridge as the servicer of the second mortgage and, on December 12, 2023, Sables became the substitute trustee of the deed of trust. *Id.* at ¶¶ 64–65.

Espino claims that because the original assignment of the second mortgage failed to include the deed of trust, it was defective. *Id.* at ¶ 63. She states that Wilmington became aware

of this defect and had Universal record a second assignment on the second mortgage on February 7, 2024. *Id.* at ¶ 67. However, Espino alleges that Wilmington "failed to record a substitution of trustee granting Defendant Sables LLC any authority to act on Wilmington's behalf pursuant to the later assignment." *Id.* at ¶ 69.

On February 22, 2024, Statebridge, acting through Sables, recorded a Notice of Default, and of Breach and Election to Sell against the property. *Id.* at ¶ 70. Espino claims that it was defective. *See id.* Sables recorded a rescission of the February 22, 2024 Notice of Default, which Espino claims was also defective. *Id.* at ¶¶ 71–72. On March 12, 2024, Sables recorded a Notice of Default and an Election to Cause Sell of Real Property Under Deed of Trust. *Id.* at ¶¶ 45, 73. Espino likewise claims that this was defective and duplicative—stating that the previous, allegedly defective Notice of Default had not been properly rescinded and because no Substitution of Trustee was ever recorded vesting authority in Sables. *Id.* at ¶¶ 73, 77.

Following the March 12, 2024 Notice of Default, Sables began to contact Espino "with demands, invoices, past-due bills, notices and threats of intent to foreclose upon her home, and demands for payment." *Id.* at ¶ 74. Espino does not indicate in what manner or at what time she responded to these notices or bills. *See id.* at ¶ 75 ("Since Plaintiff believed that the second mortgage was included in the loan modification entered into some 15 years earlier, . . . she was understandably and justifiably very skeptical of the demands and notices received from Defendant Sables LLC."). Espino states that she "attempted to negotiate with Defendants via a formal foreclosure mediation session . . . . [Espino] appeared at mediation fully prepared and with the intent to settle the matter within the bounds of reason" on July 19, 2024, but defendants "refused to negotiate whatsoever" and ended the mediation session. *Id.* at ¶¶ 81–82. "Defendants" recorded a Notice of Trustee Sale on October 22, 2024, with the foreclosure date set for November 14, 2024, at 10:00 a.m. *Id.* at ¶ 79. Espino filed suit.

In her FAC, Espino asserts seventeen causes of action against defendants:

(1)    Breach of contract against Universal, Wilmington, and Sables for "failing to send out monthly statements, failing to communicate with Plaintiff, and by completely abandoning the second loan and its contractual obligations owed to Plaintiff" in violation of the second mortgage agreement. ECF No. 1-1 at ¶¶ 104–22.

(2)    Common law breach of the covenant of good faith and fair dealing against Universal, Wilmington, and Sables[4] for failing to transmit monthly statements for the second mortgage for almost fourteen years, interfering with Espino's ability to perform on the contract and ultimately inducing her breach. ECF No. 1-1 at ¶¶ 123–44. Espino claims that this breach included "bad-faith, intentional, self-dealing, reckless, fraudulent, malicious, and/or oppressive behavior of the Defendants" and she is therefore entitled to punitive damages. *Id.* at ¶ 142.

(3)    Statutory breach of the covenant of good faith and fair dealing under Nevada Administrative Code (NAC) 645F.976(a) against Universal, Wilmington, and Sables based on the same allegations as the common law claim asserted in Count 2. ECF No. 1-1 at ¶¶ 145–51. Under this administrative code, Espino seeks punitive damages, attorney's fees and costs, and an injunction against foreclosing under the second mortgage. *Id.* at ¶ 148.

(4)    Breach of the fiduciary duty outlined in Nevada Administrative Code (NAC) 645F.976 against Universal, Statebridge, and Wilmington for failing to contact Espino for thirteen years and charging "extortionate compound interest for the

---

[4] Espino refers to Statebridge in her complaint as well, describing it as a "predecessor[ ] in interest" to Universal. ECF No. 1-1 at ¶ 129. First, from the timeline she describes, it is presumed that Statebridge is, if anything, a *successor* in interest to Universal. Nonetheless, Espino leaves unclear to what extent this claim is raised against Statebridge, because she later describes only Wilmington and Sables "stepp[ing] into the shoes of and t[aking] the second mortgage" and therefore "[a]ll of Plaintiff's claims for breach of contract, and defenses to enforcement of the promissory note and deed of trust associated with the second mortgage, can be made against Defendants, Wilmington Savings Fund Society, and Sable LLC." *Id.* at ¶¶ 143–44. Thus, the complaint does not appear to establish this claim against Statebridge.

entire 13-year period, with no hint of that practice or opportunity to pay such interest down." ECF No. 1-1 at ¶¶ 152–60, 165–66. She also raises this claim against Statebridge specifically for failing to send proper Truth in Lending Act (TILA) § 131(G) disclosures. *Id.* at ¶¶ 161–64.

(5)    Nevada mortgage fraud in violation of Nevada Revised Statutes (NRS) 645F.420 against "Universal and the other Defendants" for charging interest, penalties, and late fees without sending mortgage statements, which was outside the terms of the second mortgage agreement and was not properly disclosed to Espino. ECF No. 1-1 at ¶¶ 167–73. Under this administrative code, Espino seeks compensatory and punitive damages, as well as attorney's fees and costs. *Id.* at ¶ 172.[5]

(6)    Fraudulent concealment/misrepresentation against Universal and US Bank. ECF No. 1-1 at ¶¶ 174–201. Her claims against Universal are that it "fraudulently and intentionally withheld necessary and important information from the Plaintiff regarding the status of the second mortgage." *Id.* at ¶ 178. Her claim against US Bank is that it wrongfully assured her that, upon modification, both home mortgages would be covered by the modification in order to induce her and her husband to modify their mortgage, and charged a refinanced rate it knew Espino assumed covered both mortgages. *Id.* at ¶¶ 185–99. Espino claims that "[a]s a result of US Bank['s] intentional, fraudulent, and egregious misconduct, [Espino] is entitled to three times her actual damages as a punitive sanction," as well as attorney's fees and costs. *Id.* at ¶¶ 200–01.

---

[5] In her opposition to the motion to dismiss, Espino voluntarily dismisses this claim. *See* ECF No. 10 at 24. Accordingly, this claim is dismissed, and it not addressed further in this order.

(7)    Statutory wrongful foreclosure in violation of NRS chapter 107 against
       Statebridge, Wilmington, and Sables for initiating expedited non-judicial
       foreclosure proceedings despite failure to comply with NRS 107.080 and 107.086.
       ECF No. 1-1 at ¶¶ 202–14.

(8)    Declaratory judgment for quiet title of the Blue Hawaii property. ECF No. 1-1 at
       ¶¶ 215–27.

(9)    Violation of the TILA against Universal and its successors for charging monthly
       late fees and interest on a loan where the lender failed to send the debtor monthly
       mortgage statements detailing the interest and fees being charged. ECF No. 1-1 at
       ¶¶ 228–36.

(10)   Violation of the Real Estate Settlement Procedures Act (RESPA) against
       Universal and its successors for failing to make a good faith effort to "establish
       live contact with a delinquent borrower no later than the 36th day of a
       borrower's delinquency and again no later than 36 days after each payment due
       date so long as the borrower remains delinquent," and instead waiting nearly
       fourteen years to do so. ECF No. 1-1 at ¶¶ 237–42 (quoting 12 C.F.R. § 1024.39).
       Among other forms of relief, Espino seeks injunctive relief to enjoin the violation
       of the statute. *Id.* at ¶ 242.

(11)   Injunctive relief as authorized by NRS chapter 33 to not have the Blue Hawaii
       property foreclosed upon.[6] ECF No. 1-1 at ¶¶ 243–50.

---

[6] This is written in such a manner that it appears Espino is seeking a preliminary injunction, but it is unclear. She has not sought this relief in a separate motion. *See* Fed. R. Civ. P. 65(d)(1)(C) (requiring that a preliminary injunction "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required"). To the extent she is seeking a preliminary injunction, that request is denied without prejudice.

(12)   Statutory injunctive relief to prevent exercise of the power of sale on the house under NRS 107.080(8) against Statebridge, MERS, and Sables for failure to comply with NRS 107.086 and 107.080.[7] ECF No. 1-1 at ¶¶ 251–55.

(13)   Supplemental declaratory relief under NRS 30.030 and 30.100 that defendants voluntarily relinquished the rights to the Blue Hawaii property through their failure to act on it for over a decade. ECF No. 1-1 at ¶¶ 256–66.

(14)   Supplemental declaratory relief under NRS 30.030 and 30.100 that the second mortgage is unenforceable based on laches because defendants' inaction and unreasonable delay in collecting on it was the direct cause of the significant growth in debts. ECF No. 1-1 at ¶¶ 267–76.

(15)   Supplemental declaratory relief under NRS 30.030 and 30.100 that principles of equity to estop defendants from asserting their claims to the property under the second mortgage after acting in a manner inconsistent with their intention to collect on it for over a decade. ECF No. 1-1 at ¶¶ 277–85.

(16)   Supplemental declaratory relief under NRS 30.030 and 30.100 that the parties have greatly departed from the second mortgage contract because after Espino and her husband impliedly abandoned its provisions, defendants impliedly acquiesced to Espino's abandonment by failing to foreclose on the Blue Hawaii property at the time payments stopped. ECF No. 1-1 at ¶¶ 286–95.

(17)   Supplemental declaratory relief under NRS 30.030 and 30.100 that defendants have unclean hands for their decision to not only wait until the loan had fully matured, but several years after that, ensuring maximum penalties, before suddenly "flood[ing] [Espino] with demands for ludicrous sums of moneys and unlawful threats of foreclosure" and then refusing to negotiate with her. ECF No. 1-1 at ¶¶ 296–311.

---

[7] *See supra* n.5.

II.     **Legal standard**

    A.  **Motion to dismiss under Fed. R. Civ. P. 12(b)(6)**

The Federal Rules of Civil Procedure (FRCP) require a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal is appropriate under FRCP 12(b)(6) when a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P.  12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Under FRCP 15(a), a court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive of the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178 (1962).

B.  **Judicial notice**

When resolving a motion to dismiss, the court is generally prohibited from referencing documents outside of the complaint. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). However, "a court may properly look beyond the complaint to matters of public record" without converting a Rule 12(b)(6) motion to one for summary judgment. *Mack v. South Bay Beer Distribs.*, 667 F. Supp. 2d 1184, 1189 (9th Cir. 1986)). Federal Rules of Evidence states that, on a party's request, a court must take judicial notice of an adjudicative fact not subject to reasonable dispute if supplied with the necessary information. Fed. R. Evid. 201. A fact is not subject to reasonable dispute if it is "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

III.    **Discussion**

A.  **Defendant's request for judicial notice is granted in part.**

Defendants ask this court to take judicial notice of the exhibits that accompany their motion to dismiss (ECF No. 6-1) as matters of public record or Nevada court records. Mot., ECF No. 6 at 4–5. While not wholly clear, it appears Espino opposes the request in part, seemingly conceding the exhibits are "documents [that] were recorded on certain dates" but argues that the documents contain facts that are "disputed, illegal, and/or contain false statements." *See* Opp'n, ECF No. 10 at 13.

Although courts may take judicial notice of undisputed matters of public record, they may not judicially notice "disputed facts stated in public records." *Lee*, 250 F.3d at 690. Here, Espino seemingly disputes certain "facts" contained in the exhibits. But she neither identifies which facts are in dispute, nor does she explain the disputes. To demonstrate that a fact is disputed, the opposing party must briefly state why it disputes the moving party's asserted fact, cite to the relevant exhibit or other piece of evidence, and describe how that exhibit or evidence refutes the asserted fact. *Chamness v. Bowen*, 2011 U.S. Dist. LEXIS 161246, at *9 (C.D. Cal. Mar. 7,

2011). Although *Chamness* was explaining how a party demonstrates a disputed fact at summary judgment, the same reasoning applies here. Espino is required to briefly state what she is disputing and why. She fails to do in her opposition to the request. Nonetheless, the court reviewed the complaint. Relevant here, Espino disputes the following:

- The November 28, 2023 assignment to Wilmington, identifying it as "defective" (ECF No. 1-1 at ¶ 63);
- The February 7, 2024 assignment by Universal to Wilmington again identifying the assignment as "defective" (*id.* at ¶ 68); and
- The February 2, 2024 "notice of default" which Espino contends is defective (*id.* at ¶ 70); and
- The March 12, 2024 "notice of default" because it was defective. *Id.* at ¶¶ 76-77.

The court does not take judicial notice of facts that Espino's contends renders those documents "defective" but does take judicial notice of the dates those documents were recorded. *See Rees v. PNC Bank, N.A.*, 308 F.R.D. 266, 271 (N.D. Cal. 2015) (taking judicial notice of recorded deed of trust, recorded assignments of deed of trust, recorded notice of default, and recorded notice of trustee's sale); *Fimbres v. Chapel Mortg. Corp.*, 2009 WL 4163332, at *3 (S.D. Cal. Nov. 20, 2009) (taking judicial notice of a deed of trust, notice of default, notice of trustee's sale, assignment of deed of trust, and substitution of trustee, as each was a public record); *Angulo v. Countrywide Home Loans, Inc.*, 2009 WL 3427179, at *3 n.3 (E.D. Cal. Oct. 26, 2009) ("The Deed of Trust and Notice of Default are matters of public record. As such, this court may consider these foreclosure documents."). The court also takes judicial notice of Exhibits 1 and 4 because there was no objection or any identified dispute with those exhibits. Finally, the court takes judicial notice that Sables LLC became the substitute trustee of the deed of trust securing the Zombie Mortgage on December 12, 2023, because Espino does not contest this date, although she claims the underlying assignment was defective. *See* ECF No. 1-1 at ¶ 65.

**B. Claim one, alleging a breach of contract, fails.**

Nevada law requires a breach of contract claimant to show (1) the existence of a valid contract, (2) performance by the plaintiff, (3) material breach by the defendant, and (4) damages. *Laguerre v. Nevada Sys. of Higher Educ.*, 837 F. Supp. 2d 1176, 1180 (D. Nev. 2011) (citing *Bernard v. Rockhil Dev. Co.*, 734 P.2d 1238, 1240 (Nev. 1987)). Defendants contend that the breach of contract claim must be dismissed because Espino fails to allege a material breach by the defendants. *See* ECF No. 15 at 3–4. I agree. While Espino does allege that there was a valid contract between the parties (the mortgage), she fails to properly plead a material breach by the defendants. While the opposition includes a laundry list of obligations, that she contends the defendants[8] failed to fulfill, Espino fails to cite to, or demonstrate that, the mortgage required the defendants to perform those obligations pursuant to a contract. Indeed, Espino fails to cite any points and authorities to support her argument that the list of obligations is sufficient to show that the defendants materially breached a contract between herself and any of the defendants. Consequently, she consents to the motion being granted. *See* Local Rule 7-2(d) ("[T]he failure of an opposing party to file points and authorities in response to any motion . . . constitutes a consent to the granting of the motion."). Claim one is dismissed without prejudice and with leave to amend.

**C. Plaintiff's second claim, an alleged violation of the covenant of good faith and fair dealing, fails.**

Defendants contend that this claim fails because Espino fails to explain how the defendants are successors in interest to Universal, so Espino's attempts to hold Statebridge responsible for alleged failures by Universal is improper. ECF No. 15 at 5–6.

---

[8] As pled, these allegations are directed at Universal, and subsequently Wilmington. *See* ECF No. 1-1 at ¶ 106-107; 120.

"It is well established that all contracts impose upon the parties an implied covenant of good faith and fair dealing, which prohibits arbitrary or unfair acts by one party that work to the disadvantage of the other." *Nelson v. Heer*, 163 P.3d 420, 426 (2007). The purpose behind this covenant is to prevent a contracting party from "deliberately counterven[ing] the intention and spirit of the contract." *Morris v. Bank of Am. Nev.*, 886 P.2d 454, 457 (Nev. 1994) (citation omitted). A plaintiff who claims that the defendant breached the implied covenant of good faith and fair dealing must allege that (1) the plaintiff and defendant were parties to a contract; (2) the defendant owed a duty of good faith to the plaintiff; (3) the defendant breached that duty by performing in a manner that was unfaithful to the contract's purpose; and (4) the plaintiff's justified expectations were denied. *See Hilton Hotels Corp. v. Butch Lewis Prods.*, 808 P.2d 919 (Nev. 1991). So a contractual breach of the implied covenants of good faith and fair dealing occurs "[w]here the terms of a contract are literally complied with but one party to the contract deliberately countervenes the intention and spirit of the contract." *See Shaw v. CitiMortgage, Inc.*, 201 F. Supp. 3d 1222, 1252 (D. Nev. 2016). This cause of action stands in contrast to one for breach of contract because of its requirement for literal compliance with the terms of the contract. *See Kennedy v. Carriage Cemetery Servs., Inc.*, 727 F. Supp. 2d 925, 931 (D. Nev. 2010). Thus, while a plaintiff may plead both breach of contract and breach of the implied covenant of good faith and fair dealing as alternative theories of liability, all elements of each cause of action must be properly pled. *See, e.g., Ruggieri v. Hartford Ins. Co. of the Midwest*, 2013 WL 2896967, at *3 (D. Nev. June 12, 2013).

There is no dispute that Espino and Universal were parties to the mortgage. Also, accepting as true that Universal failed to fulfill certain obligations as a party to that mortgage, there are no allegations in the FAC that would make Statebridge liable for Universal's alleged failures. Espino merely alleges that a defendant's purchase of a mortgage loan is insufficient to establish successor liability. *Silva v. Saxon Mortg. Servs. Inc.*, 2012 WL 2450709, at *4 (E.D. Cal. June 26, 2012). Rather, potential "successor" exists only "where one company sells or otherwise

13

transfers all its assets to another company." *Acheson v. Falstaff Brewing Corp.*, 523 F.2d 1327, 1329 (9th Cir. 1975) (citation modified); *see also Lamb v. Leroy Corp.*, 454 P.2d 24 (Nev. 1969). There are four exceptions to this general rule: (1) when the purchaser expressly or impliedly agrees to assume the debts; (2) when the transaction constitutes a consolidation or merger (including a de facto merger); (3) when the purchasing corporation is merely a continuation of the selling corporation; and (4) when the transaction was fraudulently made to escape liability for debts. *See Vill. Builders 96, L.P. v. U.S. Labs., Inc.*, 112 P.3d 1082 (Nev. 2005).

The FAC fails to allege that Statebridge is a successor to Universal or that any of the exemptions apply—and in turn, fails to sufficiently plead her second claim against the defendants. Accordingly, I dismiss Espino's second claim without prejudice and with leave to amend.

**D. NAC 645F.976 applies to mortgage servicers, not lenders, so claims three and four fail as to Wilmington, and are dismissed as to Statebridge for failing to set forth sufficient allegations to meet the plausibility standard.**

In her third and fourth claims for relief, Espino alleges that the defendants violated NAC 645F.976(a)—the Nevada administrative regulation that sets forth the fiduciary obligations of mortgage servicers. *See* NAC 645F.976(a). Wilmington moves to dismiss the claims because that provision of NAC applies to mortgage *servicers*, not lenders. ECF No. 6 at 8–9. Indeed, that provision states "[a] mortgage **servicer** has a duty of good faith and fair dealing in its communications, transactions and course of dealings with each borrower in connection with the servicing to the borrower's mortgage loan." NAC 645F.976(a)(1) (emphasis added). A mortgage servicer refers to a person, organization, or entity that "engages in any activity for which a license is required." NAC 645F.940; *see also* NAC 645F.941. There is no allegation that Wilmington was a mortgage servicer. Thus, these claims against it are dismissed without prejudice and with leave to amend.

Statebridge also moves to dismiss these claims on two bases: (1) the FAC alleges that Universal, not Statebridge, violated NAC 645F.976(a); and (2) while the Code identifies the

duties of a lender like Statebridge after accepting assignment of the servicing of the loan, the FAC fails to allege that Statebridge did not comply with those duties. Espino does not respond in earnest to Statebridge's arguments that there are no allegations of failing to comply. Instead, she argues that paragraph 148 is sufficient to claim that Statebridge violated NAC 645F.976(a), and that discovery has not initiated. *See* ECF No. 10 at 23. Neither of these arguments are sufficient to survive a motion to dismiss, especially given that the opposition fails to cite any points and authorities to support her arguments. Consequently, these claims against Statebridge are dismissed without prejudice and with leave to amend.

**E.  Espino's claim of statutory wrongful foreclosure, claim 7, is dismissed.**

Defendants move to dismiss claim seven because the FAC fails to allege that Espino was not in breach of the second loan. ECF No. 6 at 10. In response, Espino does not address this argument. ECF No. 10. Rather, she argues that this claim is not a "common law wrongful foreclosure," but a claim that the defendants failed to comply with NRS 107.080. *Id.* at 24.

A trustee's exercise of the power of sale on behalf of a beneficiary to a deed of trust is governed by the procedural requirements of NRS 107.080. To commence a foreclosure, the beneficiary, the successor in interest of the beneficiary, or the trustee must execute and record a notice of default and election to sell. NRS 107.080(2)(c). A copy of the notice of default and election to sell must be mailed to the residents by registered mail or certified mail with return receipt requests. NRS 107.080(3). The trustee or other person authorized to make the sale must wait at least three months after recording the notice of default and election to sell before the sale may proceed. NRS 107.080(2)(d). After the three-month period has expired, the trustee must give notice of the time and place of the sale to each trustor by personal service or by mailing the notice by registered or certified mail to the last known address of the trustor. NRS 107.080(4)(a). A sale made pursuant to that section must be declared void if the trustee or other person authorized to make the sale does not substantially comply with the provisions of this

section or any applicable provision of sections 107.086 and 107.087. *Broche v. Quality Loan Serv. Corp.*, 2014 U.S. Dist. LEXIS 17999, at *7-8 (D. Nev. Feb. 11, 2014) (citing NRS 107.080(5)(a)).

Espino contends that the allegations in the FAC are sufficient to bring this claim, citing specifically to paragraphs 62 through 83. ECF No. 10 at 24. As a threshold matter, Espino fails to identify which section of NRS 107.080 the defendants allegedly violated. Further, although those paragraphs state there were various "defects" and "fatal flaws," Espino does not explain how these paragraphs, even accepting those allegations as true as I must, constitute a plausible claim for relief. Defendants' exhibits demonstrate that there was an assignment of the deed of trust, requested and prepared by Sables, LLC on November 28, 2023,[9] and a notice of breach, default, and election to sell real property was not recorded until March 12, 2024.[10] Sables, LLC was identified as the substitute trustee of the second loan in December 2023,[11] well before the notice was ever recorded. *Gomez v. Countrywide Bank, FSB*, 2009 WL 3617650, at *2 (D. Nev. Oct. 26, 2009) (if the note is in default and the foreclosing trustee is either the original trustee or has been substituted by the holder of the note or the holder's nominee, there is no defect in the Nevada foreclosure). Stated otherwise, Espino fails to demonstrate that she has plausibly pled a wrongful foreclosure by the defendants. In turn, while the court is doubtful this claim can be cured, I nonetheless dismiss without prejudice and with leave to amend.

### F.  Claim eight to quiet title is dismissed.

Defendants argue that Espino failed to properly plead a quiet title claim because it requires "a plaintiff to allege that she has paid any debt owned on the property." ECF No. 6 at 10 (citing *Lalwani v. Wells Fargo Bank, N.A.*, 2011 WL 4574338, at *3 (D. Nev. Sept. 30, 2011). In response, Espino asserts that she "disagrees" with the defendants, and that this issue is ripe and can be properly decided by the court. Espino's opposition is non-responsive to the defendants'

---

[9] *See* ECF No. 6-2 at 2.
[10] *See* ECF No. 6-3.
[11] *See* ECF No. 15-1.

argument.[12] Because she fails to cite points and authorities, this claim is dismissed without prejudice and with leave to amend.

### G.  TILA violation, claim nine.

Defendants move to dismiss claim nine, which alleges violations of 15 U.S.C. § 1637(b) and 12 C.F.R. § 1026.7. They argue that the FAC fails to allege that they committed any TILA violations, noting that the provisions cited in the FAC do not apply to disclosure of monthly statements, but do apply to "open ended transactions" under 15 U.S.C. § 1637(b) and 12 C.F.R. § 1026.7, and home equity plans under 12 C.F.R. § 1026.7. ECF No. 6 at 11–12. Defendants further argue that even if the provisions cited in the FAC somehow apply, the statute of limitations bars Espino's claim. *Id.* at 12. Espino responds that the defendants' arguments, including that the claim is barred by the statute of limitations, are "issues for summary judgment." ECF No. 10 at 25. This is non-responsive to the defendants' argument and does not explain how the FAC sets forth a plausible TILA violation.

"A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations . . . when 'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (citations omitted) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)). Here, assuming arguendo that the statute cited by Espino even applies here, the FAC claims that the defendants failed to transmit monthly statements for fourteen years. *See* ECF No. 1-1 at ¶ 235. The statute of limitations for a TILA action is "one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). So without argument from Espino, the FAC suggests that the statute of limitations ran thirteen years ago. Consequently, this claim is

---

[12] The court notes that there are two requirements to bringing a successful quiet title claim in Nevada: "(1) the party seeking to have another party's right to property extinguished, must overcome the presumption in favor of the record titleholder, and (2) to allege that he has paid any debt owed on the property." *Olarte v. DHI Mortgage*, 2013 WL 5492694, at *2 (D. Nev. Sept. 27, 2013). Defendants correctly point out that the FAC has fails to allege that she has paid the debt owed on the property.

dismissed. However, while the court has doubts about the plaintiff's ability to remedy this claim, it is unclear if amendment would be futile,[13] so dismissal is without prejudice and with leave to amend.

### H. RESPA violation, claim ten.

Defendants move to dismiss claim ten, which alleges a violation of the Real Estate Settlement Procedures Act (RESPA). ECF No. 6 at 12–14. Specifically, Wilmington argues that the provision cited by Espino—12. C.F.R. § 1024.39 — only applies to loan servicers and the FAC fails to allege they are a servicer. *Id.* at 13. All defendants contend that the claim should be dismissed because the FAC fails to allege "actual damages," which is a necessary requirement to bringing a RESPA claim. *Id.* Last, the defendants move to dismiss this claim because 12 C.F.R. § 1024.39 does not allow for a private right of action. *Id.*

Espino does not substantively respond to the defendants' arguments and fails to cite any points or authority to support her contention that these arguments can be addressed later, or even worse, that "[n]ow is simply not the time to dismiss anyone based on bald factual allegations in a motion to dismiss." *See* ECF No. 10 at 26.

Unlike Espino's opposition, the defendants' arguments are not bald faced, they are supported by actual case law. First, RESPA and its corresponding regulations apply only to loan servicers. *See Green v. Cent. Mortg. Co.*, 148 F. Supp. 3d 852 (N.D. Cal. 2015) (RESPA's "regulations circumscribe the conduct of loan servicers only"). Second, "damages are an essential element in pleading a RESPA claim." *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016) (first citing *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 523 (10th Cir. 2013); and then citing *Hintz v. JPMorgan Chase Bank, N.A.*, 686 F.3d 505, 510–11 (8th Cir. 2012)); 12 U.S.C. § 2605(f)(1) (stating that a plaintiff must plead "actual damages"). And third, whether 12 C.F.R. § 1024.39 confers a private right of action is unsettled law, with many cases finding no such right is conferred. *See*

---

[13] For example, equitable tolling could apply here but this was not addressed by Espino. *See Hensley v. United States*, 531 F.3d 1052, 1058 (9th Cir. 2008) (noting that equitable tolling principles may justify suspending the statute of limitations for violations under TILA).

*Rozich v. MTC Fin. Inc.*, 2023 U.S. Dist. LEXIS 192187, at *16–17 (D. Ariz. Oct. 26, 2023) (discussing the disagreement amongst courts and circuits as to whether § 1024.39 confers a private right of action); *Canizales v. Firm*, 2022 U.S. Dist. LEXIS 92786 (C.D. Cal. Apr. 20, 2022) (collecting cases holding § 1024.39 does not confer a private right of action). Espino's failure to defend the motion to dismiss with points and authorities constitutes consent to grant this motion. This claim is dismissed without prejudice and with leave to amend.

**I.    Request for declaratory and injunction relief are improperly pled; they are not stand alone claims but should be pleaded as a form of relief.**

It is well established that declaratory and injunctive relief are remedies rather than stand-alone causes of action. *See, e.g., Lorona v. Ariz. Summit L. Sch.*, LLC, 151 F. Supp. 3d 978, 997 (D. Ariz. 2015) ("[Declaratory and injunctive relief] are remedies, not independent causes of action.") (citation omitted); *7321 Wandering St. Tr. v. New Residential Mortg. Loan Tr. 2020-NPL2*, 2022 WL 717577, at *2 (D. Nev. Mar. 10, 2022) (noting that "injunctive relief is not an independent cause of action; rather it is a remedy for another viable cause of action"); *See Butler v. Progressive Direct Ins. Co.*, 772 F. Supp. 3d 1185, 1204 n.7 (D. Nev. 2025) (explaining that declaratory relief is an equitable remedy, not an independent cause of action). Because these are not independent causes of action, claims eleven through seventeen fail.

**J.    Leave to amend and a reminder that shot-gun pleadings do not comply with the Federal Rules of Civil Procedure.**

The Federal Rules of Civil Procedure require complaints to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). These rules also require "each allegation" to "be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). The Supreme Court has interpreted this requirement to mean that a complaint must provide "the defendant [with] fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Ninth Circuit precedent demonstrate that excessive page length, verbosity, or ambiguity can deny the defendant fair notice of the grounds upon which the claim

rests. *See, e.g., Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058–59 (9th Cir. 2011) (not "short and plain" when plaintiff submits 733-page amended pleading); *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 908–09 (9th Cir. 2011) (not "short and plain" when plaintiff fails to plead sufficient facts in complaint, instead relying upon exhibits for such particularity); *McHenry v. Renne*, 84 F.3d 1172, 1177–80 (9th Cir. 1996) (not "short and plain" when plaintiff's complaint was "argumentative . . . prolix in evidentiary detail, yet without simplicity, conciseness and clarity," "replete with redundancy, and largely irrelevant," and consisting of "largely immaterial background information"); *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541 (9th Cir. 1994) (not "short and plain" when plaintiff's complaint was "unwieldy in the extreme . . . 113 pages long, and often ramble[d]"); *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 415 (9th Cir. 1985) (not "short and plain" when plaintiff's complaint (including attachments) exceeded "70 pages in length, were confusing and conclusory").

While the court does not find the FAC to be a shot-gun pleading, it certainly trends in that direction. A "shotgun pleading" is a "pleading that excessively prioritizes breadth over depth, such that the complaint is 'so vague and ambitious that [the defendants could] not reasonably be required to frame a responsive pleading.'" *In re Mortgages Ltd.*, 2013 WL 1336830, at *12 (Bankr. D. Ariz. Mar. 29, 2013) (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1128–32 (11th Cir. 2001)). Such a pleading can take two forms: First, when one party "pleads multiple parties did an act, without identifying which party did what specifically." *Id.* (citing *Destfino v. Reiswig*, 630 F.3d 952, 958–59 (9th Cir. 2011)). Second, it can happen when one party "pleads multiple counts . . . and does not identify which specific facts fit that [c]ount in that very [c]ount, but instead rely on a blanket incorporation clause that incorporates all of the statement of facts." *Id.* (citing *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273 (11th Cir. 2006)). Such pleadings are disfavored because they "inexorably broaden[ ] the scope of discovery, much of which may be unnecessary" and "[u]nless the court has intervened and required the attorneys to replead the case, unless the court has definitively identified the parties' claims and defenses and has squeezed the case down

to its bare essentials, defense counsel will be unable to give [its] client an accurate answer." *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 979–84 (11th Cir. 2008). Shotgun pleadings are not tolerated by the court because they "lessen the time and resources the court has available to reach and dispose of the cases and litigants waiting to be heard." *In re Mortgages.*, 2013 WL 1336830, at *13. Here, the FAC was 42 pages long and set forth seventeen causes of action, many of which fail as a matter of law. Other issues include stating allegations that do not clearly identify which defendant or defendants are allegedly responsible for specific law violation; in other parts identifies "predecessor" where it appears it should be "successor," or seemingly seeking injunctive relief but neither stating so explicitly nor otherwise moving separately for such relief. Stated otherwise, the FAC was not simple, concise, and direct.

The court faithfully applies Rule 15 and grants Espino leave to amend a second amended complaint. *See* Fed. R. Civ. P. 15(a). I remind plaintiff's counsel that to comply with *Iqbal*/*Twombly* plausibility standard, the second amended complaint (SAC) must comply with Rule 8. The SAC should clearly state each claim, against each defendant, and sufficiently lay out the allegations that when, accepted as true, state a claim to relief that is plausible on its face.

## IV.    Conclusion

IT IS HEREBY ORDERED that defendants' motion to dismiss [ECF No. 6] is GRANTED.

IT IS FURTHER ORDERED that Sables's request to join the motion to dismiss [ECF No. 13] is GRANTED.

IT IS FURTHER ORDERED that if Espino elects to file a second amended complaint to cure the deficiencies identified in this order, it must be filed on or before October 3, 2025, and it must be titled Second Amended Complaint.

Dated: September 17, 2025

_____
Cristina D. Silva
United States District Judge